## Lahey *versus* Heenan.

1. The presumptions are in favor of the proceedings of the court below, and it is the business of the plaintiff in error to make the error clearly appear.

2. An administrator, party plaintiff, is competent, under the Acts of March 27th 1865 and April 9th 1870, to testify of matters occurring after the death of the decedent.

3. In an action by an administrator on a contract of decedent, the defendant was offered to testify as to matters stated so generally that they might have been before or after the death of the decedent; he was rejected as incompetent. *Held*, not to be error under all the evidence in the case.

4. The defendant testified in chief; on cross-examination he was inquired of as to conversations after decedent's death; this was not a ground for a general examination as to conversations with the decedent on the same subject.

5. The defendant was asked whether he owed decedent anything at the time of his death. *Held* that this necessarily involved transactions in decedent's life, and the defendant was therefore incompetent to testify.

February 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* Of January Term 1875, No. 8.

This was an action of assumpsit brought January 9th 1873, by Thomas Heenan, administrator, &c., of Dennis Heenan, deceased, against Thomas Lahey.

The declaration averred a sale by the decedent to the defendant of real estate at the corner of Eleventh and Buttonwood streets, Philadelphia, for $6000, there being on the property a mortgage for $2000, and a ground-rent, the principal of which was $1100; and also a sale of ten shares of the stock of the "Flanigan Building Association" for $800; that $3125, had been paid by the defendant on account of the indebtedness, leaving due the sum of $575; for this sum the suit was brought.

The case was tried May 13th 1874, before Lynd, J.

1. The plaintiff who was the son as well as the administrator, &c., of the decedent, who died intestate, was offered as a witness.

[Lahey *v.* Heenan.]

He was objected to by defendant as incompetent, but was admitted by the court and a bill of exceptions sealed.

He testified that he had had conversations with defendant before and since his father's death; he called-on him to get some money; defendant said he did not have it; defendant never denied owing the money; he one day said he thought they had paid enough on the property and would pay no more; he mentioned no precise sum; the property was sold for $6000; at the time of the sale witness had a conversation with the defendant about the stock; it was valued at $800; witness gave them a receipt for $3125, on account of the purchase of the property.

On cross-examination, witness said his father had died July 4th 1872; he had spoken with defendant about two months afterwards; he promised to pay the balance; witness was not present the day it was sold, nor the day the transfer was made; he did not know what took place at the time of the purchase; Mrs. Lahey, defendant's wife, did not tell witness shortly after his father's death that there was nothing more to pay on the house.

On re-examination, witness said he recollected that before his father's death, it was said that he owed defendant $200; defendant paid $1100, and there were also repairs: they accepted defendant's statement.

On re-cross-examination, he said "he only knew what his father told him as to the purchase, except the money witness received, and two months before his death witness called on Laheys; they said they had not any money and would be glad if they had."

He further, on direct examination, said "when they were talking about settlement, they went back and got the value of the stock; Mr. and Mrs. Lahey talked about getting the value of the stock; there were ten shares of stock which were transferred May 1870; it was used in the purchase."

2. The defendant asked, "Did your father borrow $2000 on this stock?" The question was objected to by plaintiff, rejected by the court and a bill of exceptions sealed.

The deed was dated March 31st 1869. The plaintiff closed.

3. For defendant it was proposed to ask him: "What conversation took place between you and decedent relation to the property and the purchase of it?" This was objected to by plaintiff, rejected by the court and a bill of exceptions sealed.

Defendant testified that plaintiff after his father's death wanted money and when he found witness had none, he wanted him to lend him five shares of the stock and he would pay it back to witness; he went to Mr. Rafferty, who said he could not do so, that the father had borrowed all the stock was worth: " Mr. Heenan at no time made any claim on me for any balance due on this property or on behalf of this property."

4. It was then proposed to ask witness, " At the time of Dennis

[Lahey *v.* Heenan.]

Heenan's death, did you owe anything on this property to him or his estate?"

The question was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

Defendant further said, that he never admitted since or before decedent's death that he owed a balance on the property.

5, 6. Defendant then offered to show that it was represented that the ground-rent was to be paid in paper money, not in gold or silver; and it was found to be payable in silver; that it was represented the cellar was entirely dry, when there was a perpetual spring in it.

The question was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

On cross-examination, the defendant said " he did not agree to pay $6000; he received ten shares of the building association stock; he received the house and stock in settlement, the mortgage and ground-rent to be deducted; decedent said 'if you don't like the house inside of a year, I'll take it back and give you eight per cent for your money;' there was a well seventeen feet deep, having a perpetual spring that overflowed the cellar. He afterwards told decedent to take the property back."

7. The defendant was then asked, "When you told Heenan to take the house back what did he say?"

The question was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

The plaintiff, on further cross-examination, asked defendant "Then this is the only explanation you have to make for not paying this money?" To which defendant replied "Yes."

8. Defendant's counsel then proposed in explanation of the above question, to ask defendant whether he owed anything on the property?

The plaintiff objected to the question, it was rejected by the court and a bill of exceptions sealed.

9. Defendant's counsel then proposed as follows: "Mr. O'Byrne having asked the witness whether he received ten shares of building association stock from Heenan, I propose to ask him how he received it, for what purpose, and upon what condition? The offer is to show that the stock was a part of the original transaction and the condition upon which it was received, and that he, Heenan, received the benefit of it."

The plaintiff objected to the offer, it was rejected, and a bill of exceptions sealed.

Anne Lahey, the wife of defendant, testified that plaintiff asked defendant to lend him five shares of building stock, and he would pay him back as soon as he could; defendant found it could not be done, because decedent had borrowed on the stock as much as he could; she testified also, that in decedent's lifetime they had

[Lahey *v.* Heenan.]

asked him to take the house back, four or five months after the delivery of the deed; also, as to other matters of the character before given in evidence. She said she had stated all that occurred about the stock.

10. The defendant then offered to show by this witness that decedent had borrowed money from him, and given him the deed; also, as to the character of the ground, the inaccurate representations about the house, and that there was nothing due of the purchase-money.

The offer was objected to by plaintiff, rejected by the court, and a bill of exceptions sealed.

11. Defendant proposed further to ask witness, "How long after the delivery of the deed was decedent told to take the property back."

This was objected to by plaintiff, rejected by the court, and a bill of exceptions sealed.

12. Defendant then proposed to show by F. B. Romig, the full value of the property at the time of the sale.

The offer was objected to by plaintiff, rejected by the court, and a bill of exceptions sealed.

13. He also offered to testify that the consideration was not $6000, as stated by plaintiff.

This was objected to as being matter in chief; rejected by the court, and a bill of exceptions sealed.

The verdict was for the plaintiff for $729.75.

The defendant took a writ of error and assigned for error, in the order above stated, the thirteen bills of exception to evidence.

*L. Hirst*, for plaintiff in error, as to the plaintiff's incompetency, referred to Act of April 15th 1869, Pamph. L. 30, 1 Br. Purd. 624, pl. 16; Breneman's Estate, 15 P. F. Smith 297; Karns *v.* Tanner, 16 Id. 297. As to rejecting the offer in the third bill of exceptions: the plaintiff having been allowed to show the consideration, the defendant was competent to contradict him. As to the 4th and 8th assignments, the plaintiff having testified that the defendant admitted that he owed him, it was competent for defendant to contradict him. As to the ninth bill of exceptions: the plaintiff having asked defendant whether he had received the ten shares of stock, he made defendant a general witness, and he had a right to give any explanation, how he received the shares, and on what condition: if decedent received the benefit of them, the claim for them would be defeated.

*J. O'Byrne*, for defendant in error, as to the competency of plaintiff, cited Williams *v.* Davis, 19 P. F. Smith 21; Acts of March 27th 1865, Pamph. L. 38; April 6th 1870, Pamph. L. 44; 1 Br. Purd. 623, 625, pl. 12, 20.

[Lahey *v.* Heenan.]

Judgment was entered in the Supreme Court, March 13th 1876,
PER CURIAM.—This is a confused case, rendering it difficult to
say whether error was committed or not. The objection to the
competency of Thomas Heenan was general. He was clearly
competent under the Acts of March 27th 1865, and April 9th
1870, to testify as to matters occurring after the death of Dennis
Heenan. No special objection was made to any of the subjects of
his testimony. On the other hand, Lahey, the defendant, was
incompetent to testify against the administrators as to matters
occurring in the lifetime of Dennis Heenan. He fell, in this
respect, directly within the exception to the Act of 1869, as to
actions against executors or administrators. Now, so far as we
can discover, in this confused bill of exceptions, it seems to have
been the effort of the court below to maintain these boundaries in
the testimony admitted and rejected. These remarks dispose of
most of the assignments of error. A part of the testimony of
Thomas Heenan might seem, in the plaintiff's examination, to refer
to matters occurring in Dennis Heenan's lifetime, but the testi-
mony of the defendant and his wife, when compared with it, shows
that the conversation spoken of by Thomas Heenan occurred after
Dennis's death, and that he was testifying to these matters, not as
facts known to himself anterior to Dennis's death, but as referred
to in these conversations. A number of the statements must be
so understood, though seemingly stated generally. It is the busi-
ness of a plaintiff in error to make the error clearly appear, before
he can ask for a reversal. The presumptions are in favor of the
proceedings in the court below. Keeping in mind the evident
effort of the court as evidenced by the whole tenor of the bill to
maintain the boundaries of testimony before referred to, it is mani-
fest that the 3d, 5th, 6th, 7th, 10th, 11th, 12th and 13th assign-
ments, on their face relate to matters occurring in the lifetime of
Dennis Heenan, and were not competent to be proved by defendant.
Though not so apparent, the 4th and 8th stand in fact in the same
condition. Thus, the question to Lahey, whether he owed any-
thing on the property *at* the death of Dennis, necessarily involved
matters occurring in his lifetime, for the instant of death was the
point of time referred to. The 9th assignment, so much relied on,
is groundless. The defendant had testified in chief in his own
behalf, and Mr. O'Byrne's question was on cross-examination and
related to the same subject, which must be understood to refer to
matters stated in conversation subsequent to Dennis's death. It
could not be made a ground of opening the door to a general
examination upon matters prior to his death. On the whole we
discover no real error in this record.

Judgment affirmed.